1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUAL CAMPOSECO, | No.:  1:19-cv-01330 BAM (PC) |
| Plaintiff, | ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE |
| v. | |
| MIKE BORDEAUX, et. al, | FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS |
| Defendant. | |
| | (ECF No. 18.) |
| | **FOURTEEN (14) DAY DEADLINE** |

**I.      Introduction**

Plaintiff Samuel Camposeco is a pretrial detainee proceeding *pro se* and *in forma pauperis* in a civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff's second amended complaint, filed on July 20, 2020, is currently before the Court.  (ECF No. 18.)

**II.     Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or

1

malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b); 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

**III.    Allegations**

Plaintiff is currently housed at Bob Wiley Detention Center in Visalia, California.  The events in the amended complaint are alleged to have occurred while Plaintiff was a pretrial detainee housed there.  Plaintiff names the following defendants: (1) Mike Boudreaux, Tulare County Sheriff/Coroner; (2) Jason Villarreal, Pro Per Facilitator/Lieutenant; (3) Julie Stamper, Pro Per Liaison Officer/Sergeant, (4) Jose Villasenor, Deputy Sheriff, (5) Cory Jones, Facility Lieutenant, (6) Matthew O'Rafferty, Sergeant, (7) Dario Davalos, Sergeant.  Each person is sued in their individual and official capacities.

Claim I

In Claim I, Plaintiff asserts a violation of his right to access to the courts.  Plaintiff alleges as follows.  On August 19, 2019, Defendant Stamper and Jones viewed the contents of Plaintiff 128GB flash drive that contained privileged and confidential materials, which was legal mail.

2

The contents included correspondence between Erin Brooks, investigator Daniel Garcia, Investigator Suzanne La Mar, Investigator Thomas Edmonds and Plaintiff.  It contained a HIPPA release forms, detailed reports of counsel who provided the flash drive while appointed as advisory counsel.  It contained information he had disclosed to his attorney such as alibi witnesses, information and work product, including interviewed of alibi. Plaintiff contends that there was all kind of confidential information on the flash drive, such as names and address, reports of interviews, medical information.  Both Defendants Stamper and Jones viewed several folders, files, videos, and other content without Plaintiff's authorization and consent and without Plaintiff being present.  They determined that the flash drive contained contraband and rejected the jump/flash drive.  Plaintiff had the same jump/flash drive in his possession for 3 months. Plaintiff alleges that his trial was continued and the judge said Plaintiff was entitled to the flash/jump drive.  Plaintiff did not have the drive for months and trial was continued.  Defendant Villarreal said the actions were justified under their policy in his response to Plaintiff's grievance. Plaintiff wrote to Defendant Sherriff Boudreaux and did not get  a response.

Claim II

In Claim II, Plaintiff asserts a violation of 6th Amendment right to confer on a confidential basis with his counsel and self-representation.  Plaintiff's rights were violated when Defendant Stamper and Jones viewed the contents of Plaintiff flash/jump drive that contained privileged and confidential material.  Plaintiff alleges Defendant Villarreal also violated his 6th Amendment rights. Plaintiff alleges that "this deprivation did not allow the plaintiff to build or conduct his defense" since he was deprived of his jump/flash drive.  This drive was delivered by Plaintiff's prior attorney Erin Brooks in April 2019 who was appointed as advisory counsel and any material on it was confidential and privileged mail.  Plaintiff's trial has been continued for three months and still continued because of the pandemic.  Plaintiff later received the contents of the flash drive through his private investigator.

Claim III

In Claim III, Plaintiff asserts First Amendment right to be free from retaliation.  On October 3, 2019, Officer Saare had Plaintiff's informa pauperis papers and said that Defendant

1    Stamper wanted to know who Plaintiff is suing.  Plaintiff refused but ultimately told Officer Saare

2    who Plaintiff was suing in this lawsuit. Plaintiff was taken to the law library. Plaintiff had 2 CD's

3    containing confidential information from his attorney and he only received 1 CD.  He told Officer

4    Saare and Sergeant Davalos that his staff has lost his CD.  Several thorough searches were

5    conducted of Plaintiff's person, personal property and area.  Plaintiff was put in a holding cell and

6    "patted down vigorously" and Defendant Villa senor began reading Plaintiff's legal material on

7    Plaintiff's person saying, "I'm scanning, it, I can do that."  Villasenor accused Plaintiff of

8    concealing drugs and the CD in his "butt" and "don't you shove stuff in your butt" and was

9    padding down the Plaintiff, cropped the Plaintiff's left buttock in a circular manner, stretched his

10   boxer and pants in an outward direction exposing his buttocks for a visual cavity search without

11   Plaintiff's consent.  Plaintiff told him "don't touch me like that" and he feared he would be

12   assaulted if he resisted.  Both Defendant Villarreal and Davalos were observing and did nothing.

13   Homosexual comments were made after this incident on the same day. Plaintiff was placed in

14   administrative segregation without being placed on contraband surveillance watch.  If he was a

15   danger to himself, Plaintiff should have been placed on contraband watch.

16          Claim IV

17          In Claim IV, Plaintiff asserts retaliation for pursuing litigation.  He alleges as follows.  On

18   October 3, 2019, Plaintiff received 2 disciplinary infractions from Defendant Villasenor which

19   were approved by Defendant Davalos.  They resulted in 2 10-day loss of privileges because of the

20   incident regarding his informa pauperis and theft of his CD.  On October 7, 2019, Villasenor and

21   Defendant O'Rafferty retaliated by imposing an additional 30 days. Plaintiff alleged O'Rafferty

22   provided a hearing regarding the additional 30 days but Plaintiff was not alleged to present

23   evidence or witnesses.  O'Rafferty manipulated the computer system which records disciplinary

24   infractions. He allowed deputies who were not named in the committee for Plaintiff to sign as

25   though they were there and denied evidence Plaintiff presented. Defendant Villarreal later

26   overturned  the 30-day loss of privilege.

27          Claim V

28          In Claim V, Plaintiff complains that he was retaliated against for pursuing litigation.  On

4

October 22, 2019, Defendant Stamper gave deputies under her supervision, Saare, Nelson, Calderon, a copy of Plaintiff's order of payment directed to the detention payment from the district court.  Plaintiff was escorted to the law library and after the library, retaliation began. Plaintiff's cell was searched and left in disarray, resulting in a disciplinary infraction, and was written up for having a hot water device called a "stinger"  He received an infraction when no other inmate received one for using a stinger which is a common practice for inmates.  This is a campaign of harassment, approved by Villarreal, as Plaintiff received 30 day loss of privilege.

Claim VI

Plaintiff alleges that Defendants Stamper, Jones and Villarreal violated his Due Process by intentionally depriving Plaintiff of the jump/flash drive on October 3, 2019 which contained confidential correspondence and documents between his counsel, advisory counsel and private investigators.  Defendants are aware that Plaintiff had 16 blue ray discs transferred to the jump/flash drive for his case because the facility did not have the proper equipment to read blue ray discs.  The contents were legal mail under federal regulations and their policy to inspect anything arriving into the jail means an inmate must be present when privileged and confidential materials are opened.  They reviewed the device without Plaintiff's knowledge and consent and rejected the jump/flashdrive without informing Plaintiff or providing a hearing.

Claim VII

Plaintiff alleges that his right to Due Process was violated by Defendant Villarreal and Defendant Davalos and Defendant Stamper when he was placed in administrative segregation on October 3, 2010  without advance notice, or being informed of the charges or opportunity to rebut the administrative segregation. Plaintiff alleges this was in retaliation for voicing his constitutional rights.

Claim VIII

Plaintiff claims that his Due Process right to sanitary and acceptable conditions of confinement was violated on November 18, 2019 by Defendant Stamper, Villarreal, Davalos when Plaintiff was reclassified to administrative segregation.  The "Defendant" moved a white inmate to an empty cell and end cell, which is notoriously poorly insulated, with no working

plumbing, infested with spiders and fecal matter on the vents.  They put Plaintiff in the end cell.  The toilet was filled with urine and fecal matter when Plaintiff arrived with a foul stench.  Plaintiff received no cleaning supplies nor was there any hot water.  Plaintiff asked Stamper and Davalos for a cell move to more humane conditions and both said, "you'll be fine."  Plaintiff had to empty out the flooding in the toilet into the sink to pass bowel movement or urinate over 8 days until maintenance was eventually called.

Claims IX

Plaintiff alleges he was retaliated against by Defendant Stamper, Davalos and Villarreal on October 3, 2019, when the Plaintiff suffered a campaign of harassment by defendant by being transferred to administrative segregation, which served no penological purpose.  On November 18, 2019, Defendant Stamper required that Plaintiff be transferred to another facility and was transferred again for no penological reason.  He was transferred to a place where there was no law library, no telephone, which deprived Plaintiff from making legal calls.  A computer was taken to Plaintiff but the computer was not working and Plaintiff could not use the computer or conduct legal calls for weeks.  On November 18, 2019, Plaintiff was reclassified and transferred where he was assigned to unit 42, cell 248.  Plaintiff was allegedly in possession of an 18-inch rod which was contraband.  But Plaintiff was not charged and other inmates who have weapons for protection do not get assigned to administrative segregation.  He was not given any procedural safeguards.  Davalos requested the placement and Villarreal approved the placement. Plaintiff was again reclassified on December 19, 2019 and moved.  There was no reason to move Plaintiff and it served no legitimate penological interest but a hinder to Plaintiff's "litigation and constitutional right by compelling him to endure inhumane conditions of confinement and deprive the plaintiff of a law library and access to a telephone."  This conduct was a method to discourage the Plaintiff for future and current litigation.

Plaintiff seeks a preliminary and permanent injunction, to investigate the defendant and place them on administrative leave or terminate them, compensatory and punitive damages of $2,000,000 for mental pain and suffering.

///

### III. Discussion

In the Court's prior screening order, Plaintiff was informed that Plaintiff may not change the nature of this suit by adding new, unrelated claims in his second amended complaint. However, in the second amended complaint, Plaintiff has added new or different claims not previously presented.

Plaintiff's complaint fails to comply with Federal Rules of Civil Procedure 8, 18 and 20. Plaintiff was informed in the prior screening order that Plaintiff must decide which related claims he wishes to pursue in this action and which claim he will pursue in a separate action. Plaintiff was informed that if Plaintiff's amended complaint continues to improperly join claims and defendants, the Court will choose which cognizable claims, if any, that Plaintiff may pursue. Since Plaintiff's second amended complaint continues to improperly join claims and defendants, the Court will choose which cognizable claims that Plaintiff may pursue.

#### A.      Federal Rule of Civil Procedure 8

Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). As noted above, detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. *Id*.; *see also Twombly*, 550 U.S. at 556–557; *Moss*, 572 F.3d at 969.

Plaintiff's amended complaint is not short, and it lacks sufficient factual allegations to state a claim for relief. Again, Plaintiff's complaint relies on generalized and conclusory allegations and lacks specific factual allegations about what happened, who was involved, when it occurred, and where it occurred. Further, as discussed below, Plaintiff has, again, improperly joined unrelated claims and he may not proceed with improperly joined claims.

#### B.      Linkage Requirement

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law]...subjects, or causes to be subjected, any citizen of the United States...to the deprivation of any rights, privileges, or immunities secured by the Constitution...shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute plainly requires that there be an actual connection or link between the actions of the defendant(s) and the deprivation alleged to have been suffered by Plaintiff.  *See Monell v. Dep't of Soc. Servs*., 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976).  The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff fails to link Defendant Sheriff Mike Boudreaux to any alleged deprivation of his rights.  Plaintiff's sole allegation is that he wrote to Defendant Boudreaux, but did not get a response. A mere allegation that he wrote to a defendant is insufficient to state what that person did which violated constitutional rights.  Plaintiff fails to clearly state what the Defendant was responsible for in violation of his constitutional rights and the factual basis for such a claim.  Plaintiff's complaint fails to put the defendant on notice of Plaintiff's claims against him or her.  *See Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004).

To the extent Plaintiff seeks to hold the Sheriff, Sergeant or Lieutenant liable based solely upon their supervisory roles, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo County, Ariz.,* 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (citation and quotation marks omitted); accord *Lemire v. California Dep't of Corr. and Rehab.,* 726 F.3d 1062, 1074-75 (9th Cir. 2013); *Lacey v.*

8

1  *Maricopa Cnty*., 693 F.3d 896, 915-16 (9th Cir. 2012) (en banc). "Under the latter theory,

2  supervisory liability exists even without overt personal participation in the offensive act if

3  supervisory officials implement a policy so deficient that the policy itself is a repudiation of

4  constitutional rights and is the moving force of a constitutional violation." *Crowley*, 734 F.3d at

5  977 (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks

6  omitted).

7        Plaintiff cannot hold any supervisory Defendant liable based solely upon the conduct of

8  their subordinates.  Plaintiff has failed to allege any facts that Defendant Sheriff Boudreaux was

9  personally responsible for any actions. Plaintiff has failed to allege any facts identifying a policy

10  that he alleges repudiated his constitutional rights, or any facts demonstrating that any deficient

11  policy was the moving force behind the violation of Plaintiff's constitutional rights.

12        **C.**      **Rules 18 and 20 Related Claims Requirement**

13        A complaint must also comply with the requirements of Federal Rules of Civil Procedure

14  18 and 20. Under these rules, a plaintiff may not proceed on a myriad of unrelated claims against

15  different defendants in a single action. Fed. R. Civ. P. 18(a), 20(a)(2). Multiple claims against a

16  single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim

17  B against Defendant 2. Unrelated claims against different defendants belong in different suits, not

18  only to prevent the sort of morass [a multiple claim, multiple defendant] suit produces, but also to

19  ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3

20  the number of frivolous suits or appeals that any prisoner may file without prepayment of the

21  required fees. 28 U.S.C. § 1915(g); *K'napp v. California Dept. of Corrections*, 2013 WL

22  5817765, at *2 (E.D. Cal., Oct. 29, 2013), *aff'd sub nom. K'napp v. California Dept. of*

23  *Corrections & Rehabilitation*, 599 Fed. Appx. 791 (9th Cir. 2015) (quoting *George v. Smith*, 507

24  F.3d 605, 607 (7th Cir. 2007). See also Fed. R. Civ. P. 20(a)(2) ("Persons...may be joined in one

25  action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the

26  alternative with respect to or arising out of the same transaction, occurrence, or series of

27  transactions or occurrences; and (B) any question of law or fact common to all defendants will

28  arise in the action.").

Plaintiff's second amended complaint, again, does not comply with Federal Rules of Civil Procedure 18 and 20 because it includes unrelated claims against different defendants. Plaintiff may not raise different claims against different Defendants in a single action. Merely because the claims arose while Plaintiff was at the same institution does not make the claims properly joined. For instance, as Plaintiff was informed, Plaintiff may not, in a single case, assert a claim against Defendant O'Rafferty for denial of Due Process at a hearing while simultaneously asserting claims for access to the courts.  Plaintiff is claiming unrelated claims for sexual assault, conditions of confinement for sanitation, claims for retaliation, due process and many other claims.

As Plaintiff was previously informed, unrelated claims involving multiple defendants belong in different suits. The Court informed Plaintiff that in any amended complaint which pursued improperly joined claims, the Court would choose which cognizable claims, if any, that Plaintiff may pursue.  The Court herein makes that selection.

### D.      Access to Courts under First Amendment and Sixth Amendment

Prisoners (including pretrial detainees) have a constitutional right of access to the courts under the First Amendment.  *See Lewis v. Casey*, 518 U.S. 343, 350 (1996) (limiting this claim to direct criminal appeals, habeas corpus proceedings, and civil rights actions challenging conditions of confinement); *Bounds v. Smith*, 430 U.S. 817, 821 (1977).  To establish a claim for any violation of the right of access to the courts, the prisoner must prove that there was an inadequacy in the prison or jail's legal access program that caused him an actual injury.  *See Lewis*, 518 U.S. at 350-55.  To prove an actual injury, the prisoner must show that the inadequacy in the prison or jail's program hindered his efforts to pursue a non-frivolous claim concerning a conviction or conditions of confinement.  *See id*. at 354-55.  The right of access to the courts, however, is limited to non-frivolous direct criminal appeals, habeas corpus proceedings, and § 1983 civil rights actions. *Lewis v. Casey*, 518 U.S. and 354–55. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.  A claim "is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

In order to frame a claim of a denial of the right to access the courts, a prisoner must allege facts showing that he has suffered "actual injury," a jurisdictional requirement derived from the standing doctrine. *Lewis*, 518 U.S. at 349. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348 (citation and internal quotations omitted); see also *Alvarez v. Hill*, 518 F.3d 1152, 1155 n. 1 (9th Cir. 2008) (finding that district properly granted summary judgment because prisoner had no "allege[d] injury, such as inability to file a complaint or defend against a charge" resulting from deficiencies in access to legal materials) (quoting *Lewis*, 518 U.S. at 353 & 353 n. 4).

Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim). *Christopher v. Harbury*, 536 U.S. 403, 412–415 (2002). The plaintiff must show: 1) the loss of a 'nonfrivolous' or 'arguable' underlying claim; 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit. *Id*. at 413–14.

Plaintiff does not state a cognizable claim under the First Amendment.  He does not state facts related to denial of access for direct criminal appeals, habeas corpus proceedings, and civil rights actions.  Rather, he complains about interference with his defense in his underlying criminal proceeding.  In addition, Plaintiff has failed to allege any injury. Trial has been continued and as his allegations show, he can obtain assistance with the trial court.

The Sixth Amendment provides for access to the courts in the context of a criminal defendant's right to self-representation. A criminal defendant has a constitutional right to conduct his own defense, *Faretta v. California*, 422 U.S. 806, 834–836, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and the right to self-representation necessarily includes the right to prepare a defense. *Taylor v. List*, 880 F.2d 1040, 1047 (9th Cir.1989); *Milton v. Morris*, 767 F.2d 1443, 1145–1146 (9th Cir.1985).

The amended complaint does not plead sufficient facts to show a violation of Plaintiff's rights under the Sixth Amendment and access to the courts.  Plaintiff alleges that he is a pro per

11

defendant in a criminal case, but he does not allege any actual injury. Plaintiff has not alleged any injury from his trial. In fact, he alleges the trial judge assisted him with the jail and that the trial has been continued to address the legal materials, but more specifically because of COVID-19. For these reasons, Plaintiff does not state a claim under the Sixth Amendment. *See Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) ("The right of access to the courts is subsumed under the first amendment right to petition the government for redress of grievances."); *United States v. Olano*, 62 F.3d 1180, 1193 (9th Cir. 1995) (holding that the Sixth Amendment does not guarantee a constitutional right to hybrid representation, but requires a showing of ineffective assistance of counsel or a complete absence of counsel at a critical stage of the trial to state a violation). Plaintiff has failed to show his alleged Sixth Amendment violation cannot be addressed in his criminal appeal. *See Harbury*, 536 U.S. at 415 (holding that a prisoner's access to courts claim can be brought only where the remedy sought is not otherwise available in another suit). *See Williams v. Navarro*, No. 18CV1318-DMS (RBM), 2020 WL 619625, at *6 (S.D. Cal. Feb. 10, 2020) (Plaintiff required to show injury where alleges he was required to obtain a continuance in his appeal of a criminal conviction where he is represented by an attorney).

### E.   Reading Legal Mail under the Sixth Amendment and First Amendment

Plaintiff complains about Defendants reading documents on the flashdrive/jumpdrive or other litigation files.

Prisoners have a Sixth Amendment right to confer privately with counsel and the practice of opening legal mail in the prisoner's presence is specifically designed to protect that right. *Mangiaracina v. Penzone*, 849 F.3d 1191, 1196-97 (9th Cir. 2017) (Sixth Amendment requires a pretrial detainee be present when legal mail related to a criminal matter is inspected; even a single incident of improper reading of a pretrial detainee's mail may give rise to a constitutional violation). Even a single instance of an employee reading a prisoner's criminal legal mail is sufficient to establish a Sixth Amendment violation. *Nordstrom v. Ryan*, 762 F.3d 903 (9th Cir. 2014). Prison officials may open and inspect, but not read, a prisoner's legal mail. *Nordstrom v. Ryan*, 762 F.3d at 910. In addition to prohibiting prison employees from actually reading prisoner legal mail, the Sixth Amendment gives prisoners "the right to be present when legal mail related

12

to a criminal matter is inspected" to avoid the "chilling" of a prisoner's protected communications. *Mangiaracina v. Penzone*, 849 F.3d 1191, 1196 (9th Cir. 2017). To maintain a Sixth Amendment claim, a prisoner must allege that the mail was marked as "legal mail." *Id.* (the district court correctly determined that Mangiaracina failed to allege that the mail was properly marked as legal mail, so these counts were properly dismissed.)  Nonetheless, correctional institutions and jails have a legitimate governmental interest in imposing certain restraints on inmate or detainee correspondence to maintain order and security. *See Procunier v. Martinez*, 416 U.S. 396, 413 (1974), overturned on other grounds by *Thornburgh v. Abbott*, 490 U.S. 401, 413–14 (1989). For example, inmates and detainees may have their mail screened to ensure that there is no contraband inside. *Mangiaracina v. Penzone*, 849 F.3d at 1195.

The Ninth Circuit "recognize[s] that prisoners have a protected First Amendment interest in having properly marked legal mail [including civil mail] opened only in their presence." *Hayes v. Idaho Corr. Ctr.,* 849 F.3d 1204, 1211 (9th Cir. 2017) (*citing Nordstrom*, 762 F.3d at 903). In *Hayes v. Idaho Correctional Center*, the Ninth Circuit held that the First Amendment protects prisoners' right to have legal mail opened in their presence. However, an isolated instance or occasional opening of legal mail outside the inmate's presence does not rise to the level of a constitutional violation. *See Stevenson v. Koskey*, 877 F.2d 1435, 1441 (9th Cir. 1989).

"Mail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail." *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996). "All correspondence from a court to a litigant is a public document, which prison personnel could if they want inspect in the court's files." Id. at 1094 (citing to *Martin v. Brewer*, 830 F.2d 76, 78 (7th Cir. 1987)). Mail from a "sheriff's" department which is a county agency and such mail also does not constitute legal mail. *O'Keefe v. Van Boening*, 82 F.3d 322, 326 (9th Cir. 1996) (a prison need not treat all mail sent to/from government agencies and officials as legal mail); see also *Keenan v. Hall*, 83 F.3d at 1094 (concluding that mail from the courts, as contrasted to mail from a prisoner's lawyer, it not legal mail), amended on denial of rehr'g 135 F.3d 1318 (9th Cir. 1998).

In a prior complaint, Plaintiff alleged the documents contained police reports, medical reports, photographs, videos and statements.  These documents are not from any legal counsel

1   representing Plaintiff.  The documents were apparently produced during the course of Plaintiff's

2   criminal discovery in his underlying prosecution.  Such documents are not legal mail and are not

3   entitled to the protections of "legal mail." Even if the items constitute "legal mail" under local

4   regulations, that does not mean the mail also constitutes as "legal" mail entitled to federal

5   constitutional protections. Under federal law, "legal mail" entitled to protection is narrowly

6   defined as confidential correspondence between a prisoner and his attorney. See *Nordstrom I*, 762

7   F.3d at 909.

8          In the second amended complaint, Plaintiff alleges that the documents on the flash/jump

9   drive included confidential communications from this appointed advisory counsel as well has

10  investigations.  He alleges the flash/jump drive was thoroughly read by Defendant Stamper and

11  Jones outside of Plaintiff's presence and confiscated the flash/jump.  Plaintiff does not

12  specifically allege that the flash/jump drive was labeled legal mail, but liberally construing the

13  allegations, Plaintiff alleges a violation of his Sixth Amendment and First Amendment right when

14  Defendants Stamper and Jones read the entirety of flash/jump drive outside Plaintiff's presence

15  and confiscated it. Liberally construing the second amended complaint, Plaintiff states a claim for

16  interference with his mail under the First and Sixth Amendments.

17          **F.      Official Capacity**

18          Plaintiff has sued each of the defendants in their official capacities.  A suit against a public

19  employee in his official capacity is equivalent to a claim against the employer, *Kentucky v.*

20  *Graham*, 473 U.S. 159, 166 (1985); *Center for Bio-Ethical Reform, Inc. v. Los Angeles County*

21  *Sheriff Department*, 533 F.3d 780, 799 (9th Cir. 2008), cert. denied, 555 U.S. 1098 (2009). It

22  appears the employer of the defendants is Tulare County.  To the extent that plaintiff is purporting

23  to state a federal civil rights claim against Tulare County, the Supreme Court held in *Monell v.*

24  *New York City Dep't of Soc. Servs*., 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978),

25  that "a local government may not be sued under § 1983 for an injury inflicted solely by its

26  employees or agents. Instead, it is when execution of a government's policy or custom, whether

27  made by its lawmakers or by those whose edicts or acts may fairly be said to represent official

28  policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*,

436 U.S. at 694; *see also Connick v. Thompson*, 563 U.S. 51, 60, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011) ("under § 1983, local governments are responsible only for their own illegal acts" (emphasis in original, internal quotation marks omitted)). In order to state a claim arising from the execution of a local entity's policy or custom, plaintiff must set forth factual allegations to show that the execution of a specific policy, ordinance, regulation, custom or the like was the "actionable cause" of any alleged constitutional violation. See, e.g., *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1146 (9th Cir. 2012) ("a plaintiff must also show that the policy at issue was the 'actionable cause' of the constitutional violation, which requires showing both but-for and proximate causation"). Further, a *Monell* claim may not be premised on an isolated or sporadic incident. See, e.g., *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."); *Thompson v. Los Angeles*, 885 F.2d 1439, 1443-44 (9th Cir. 1989) ("Consistent with the commonly understood meaning of custom, proof of random acts or isolated events are insufficient to establish custom."), overruled on other grounds, *Bull v. City & County of San Francisco*, 595 F.3d 964, 981 (9th Cir. 2010) (en banc).

Plaintiff fails to state a cognizable claim against the defendant in their official capacities. Plaintiff has failed to allege sufficient facts to satisfy the *Monell* requirements, as discussed above.

### G.   Fourteenth Amendment Due Process

Plaintiff also alleges that the flashdrive/jumpdrive was taken without Due Process.

The Due Process Clause of the Fourteenth Amendment of the United States Constitution protects Plaintiff from being deprived of property without due process of law, *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974), and Plaintiff has a protected interest in his personal property, *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974). Authorized, intentional deprivations of property are actionable under the Due Process Clause. See *Hudson v. Palmer*, 468 U.S. 517, 532, n.13 (1984); *Quick v. Jones*, 754 F.2d 1521, 1524 (9th Cir. 1985). However, unauthorized intentional and/or negligent deprivations of property do not constitute a violation of the

15

1    procedural component of the Due Process Clause of the Fourteenth Amendment so long as the

2    state provides an adequate post-deprivation remedy. *Hudson*, 468 U.S. at 533; *Barnett v. Centoni*,

3    31 F.3d 813, 816 (9th Cir. 1994).

4         Here, Plaintiff has not alleged any facts demonstrating that the Defendant's confiscation

5    of his flashdrive/jumpdrive legal documents was both intentional and authorized. Further, to the

6    extent that Plaintiff's claim that his legal documents were confiscated is based on an unauthorized

7    deprivation of property, Plaintiff has an adequate post-deprivation remedy under California law.

8    Plaintiff may not pursue a due process claim arising from the unauthorized confiscation of his

9    legal documents. *Barnett*, 31 F.3d at 816-17 (citing Cal. Gov't Code §§ 810-895). Therefore,

10   Plaintiff has not pled a cognizable claim for deprivation of property in violation of the Fourteenth

11   Amendment.

12        **H.    Grievances**

13        Plaintiff asserts a claim against Defendant Villarreal for handling his appeal about

14   Defendants Stamper and Jones reading his jump/flash drive.  Plaintiff also alleges he wrote to

15   Defendant Boudreaux and did not get a response.

16        Detainees and prisoners do not have an independent constitutional due process

17   entitlement to a specific administrative grievance procedure.  *Ramirez v. Galaza*, 334 F.3d 850,

18   860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (holding that there is no

19   protected liberty interest to a grievance procedure).  Correctional or jail officials are not required

20   under federal law to process inmate grievances in any specific way.  Allegations that correctional

21   or jail officials denied or refused to process grievances do not state a cognizable claim for a

22   violation of a prisoner's due process rights, because there is no right to a particular grievance

23   process or response.  *See, e.g., Rodriguez v. Moore*, No. 2:18-cv-1089-TLN-KJN P, 2018 WL

24   3203131, at *3 (E.D. Cal. June 28, 2018) (finding pretrial detainee had no due process right to a

25   grievance procedure).  Accordingly, Plaintiff fails to state a cognizable claim against Defendant

26   Villarreal or Boudreaux.

27        **I.    First Amendment - Retaliation**

28        Prisoners (including pretrial detainees) have a First Amendment right to file grievances

16

against correctional or jail officials and to be free from retaliation for doing so.  *Watison v. Carter*, 668 F.3d 1108, 1114-1115 (9th Cir. 2012); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).  Likewise, prisoners have a right to pursue civil rights claims free from retaliation.

A retaliation claim has five elements.  *Id*. at 1114.  First, the plaintiff must allege that the retaliated-against conduct is protected.  *Id*.  The filing of an inmate grievance is protected conduct, *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005), as are the rights to speech or to petition the government, *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985).  *See also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).  Second, the plaintiff must show the defendant took adverse action against the plaintiff.  *Rhodes*, at 567.  Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct.  *Waitson*, 668 F.3d at 1114.  In other words, the plaintiff must show that the retaliation was because of the protected conduct.

Fourth, the plaintiff must allege that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities."  *Robinson*, 408 F.3d at 568 (internal quotation marks and emphasis omitted).  "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," *Brodheim*, 584 F.3d at 1269, that is "more than minimal," *Robinson*, 408 F.3d at 568 n.11.  Fifth, the plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution. . . ." *Rizzo*, 778 F.2d at 532.

As noted above, a plaintiff need only allege facts sufficient to support a plausible claim for relief, but the mere possibility of misconduct is not sufficient.  *Iqbal*, 556 U.S. at 678-79.  The Court is "not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc*., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  Therefore, mere allegations that a plaintiff engaged in protected activity, without knowledge resulting in animus by a defendant, is insufficient to show that a plaintiff's protected activity was the motivating factor behind a defendant's actions.

Here, Plaintiff alleges retaliation when he received two 10-day loss of privileges on October 3, 2019, because of the incident with the CD.  Plaintiff's conclusory  allegations fail to

1    allege that he was given the disciplinary action because of that prisoner's protected conduct, and

2    that such action chilled the inmate's exercise of his First Amendment rights, and the action did

3    not reasonably advance a legitimate correctional goal.  Indeed, Plaintiff alleges he was given the

4    infractions because of the incident with the CD.

5            Plaintiff also alleges that he was retaliated against for filing lawsuits when his cell was

6    searched after Defendant Stamper gave Plaintiff's informa pauperis application to officers on

7    October 22, 2019.  Again, Plaintiff's conclusory allegations fail to allege that the cell search

8    chilled the inmate's exercise of his First Amendment rights, and the action did not reasonably

9    advance a legitimate correctional goal.  Indeed, Plaintiff alleges that the cell search discovered an

10   unpermitted hot water device in Plaintiff's cell.

11           Even if Plaintiff could state a cognizable claim, these claims are improperly joined with

12   the claim that certain defendants read his legal mail.

13           **J.      Due Process - Conditions of Confinement**

14           "[P]re-adjudication detainees retain greater liberty protections than convicted ones."

15   *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004) (citations omitted).  As a pretrial detainee,

16   Plaintiff is protected from conditions of confinement which amount to punishment.  *Bell v.*

17   *Wolfish*, 441 U.S. 520, 535-536 (1979); *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017-

18   1018 (9th Cir. 2010).

19           It is the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment,

20   which governs pretrial detainees.  *Castro v. County of Log Angeles*, 833 F.3d 1060, 1067-68 (9th

21   Cir. 2016).  In order to state a cognizable claim for unconstitutional conditions of confinement

22   related to a risk to safety or health, a plaintiff must specifically plead as follows:  (1) the

23   defendant made an intentional decision with respect to the conditions under which the plaintiff

24   was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm;

25   (3) the defendant did not take reasonable measures to abate that risk, even though a reasonable

26   officer in the circumstances would have appreciated the high degree of risk involved—making the

27   consequences of the defendant's conduct obvious; and (4) by not taking such measures, the

28   defendant caused the plaintiff's injuries.  *Castro*, 833 F.3d at 1071.  With respect to the third

1    element, the defendant's conduct must be "objectively unreasonable." *Id*. (citing *Kingsley v.*

2    *Hendrickson*, — U.S. —, 135 S. Ct. 2466, 2473, 192 L. Ed. 2d 416 (2015)).

3        The odor, unsanitary conditions, and risk posed by raw sewage is obvious to a layperson

4    and is why cities provide plumbing and waste treatment plants. *Moak v. Sacramento Cty*., No.

5    215CV0640MCEKJNP, 2016 WL 393860, at *3–4 (E.D. Cal. Feb. 2, 2016), report and

6    recommendation adopted, No. 215CV0640MCEKJNP, 2016 WL 8731337 (E.D. Cal. Mar. 4,

7    2016). Substantial deprivations of shelter, food, drinking water, or sanitation for four days, for

8    example, are sufficiently serious to satisfy the objective component of an Eighth Amendment

9    claim. Anderson, 45 F.3d at 1314. A conditions of confinement claim may also arise from the

10   type of "egregious circumstances" alleged by Plaintiff in this matter. *Walker v. Schult*, 717 F.3d

11   119, 127 (2nd Cir. 2013) (citing, inter alia, *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir.

12   1972) ("Causing a man to live, eat and perhaps sleep in close confines with his own human waste

13   is too debasing and degrading to be permitted."); *Gaston v. Coughlin*, 249 F.3d 156, 165-66 (2d

14   Cir. 2001) (inmate stated an Eighth Amendment claim where the area in front of his cell "was

15   filled with human feces, urine, and sewage water" for several consecutive days).

16        Plaintiff fails to state a cognizable claim.  He fails to specify what each defendant did or

17   did not do to deny Plaintiff humane conditions of confinement, and cannot simply assert that a

18   deprivation occurred and then accuse a group of defendants of being "responsible" for that

19   deprivation. Plaintiff does not say who he told about the conditions, but merely alleges that

20   Defendants Stamper and Davalos classified him to administrative segregation.  Plaintiff fails to

21   state a cognizable claim.

22        Plaintiff was previously informed that if Plaintiff's second amended complaint continues

23   to improperly join claims and defendants, the Court will choose which cognizable claims, if any,

24   that Plaintiff may pursue. Thus, even if Plaintiff could state a cognizable claim, this claim is

25   improperly joined with the claim that certain defendants read his legal mail.

26       **K.  Due Process - Sexual Assault**

27        The Constitution's substantive due process protections prohibit arbitrary government

28   action so egregious as to "shock the conscience." *County of Sacramento v. Lewis*, 5223 U.S. 833,

19

846 (1998). To determine whether conduct meets this standard, courts consider "whether the officers had the opportunity for actual deliberation." *Porter v. Osborn*, 546 F.3d 1131, 1138 (9th Cir. 2008). Actions taken after the opportunity for deliberation may "shock the conscience," whereas "snap judgments" made in the heat of the moment meet this standard only if the officer "acts with a purpose to harm unrelated to legitimate law enforcement objectives." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010). Substantive due process jurisprudence permits prison officials to subject pretrial detainees to strip searches and body cavity searches only if they are conducted in a "reasonable manner, avoiding needless intrusions on inmates' privacy." *Bell*, 441 U.S. at 576. Whether conduct during a search is unreasonable depends heavily on the factual circumstances of each case. Cf. *Smith v. Los Angeles County*, No. CV 07–7028–VAP (MAN), 2010 WL 2569232, *5 (C.D. Cal. Apr. 22, 2010), report and recommendation adopted, 2010 WL 2572570 (C.D. Cal. June 19, 2010), aff'd, 452 F. App'x 768 (9th Cir. Oct. 6, 2011) (no Fourteenth Amendment due process claim where prison official, without sexual comment, pulled plaintiff's boxers down, inserted his hand into "the cavity of [plaintiff's] buttocks" and "cupped" plaintiff's genitals during a search); *Houston v. Buck*, No. CIV S 03–1625-FCD-JFM-P, 2005 WL 1378964, *3 (E.D. Cal. 2005), report and recommendation adopted, 2005 WL 1561530 (E.D. Cal. June 29, 2005) (triable issue as to Eighth Amendment violation where plaintiff alleged that guard said "let me feel on you" before conducting a pat-down search during which he squeezed parts of plaintiff's body).

"In a case ... where the allegation is that a guard's conduct began as an invasive procedure that served a legitimate penological purpose, the prisoner must show that the guard's conduct exceeded the scope of what was required to satisfy whatever institutional concern justified the initiation of the procedure." *Bearchild*, 947 F.3d at 1145.

Plaintiff has not stated a cognizable claim.  Plaintiff has not alleged that there was any sexual connotation during the pat down. There was a legitimate reason for the pat down, as the Defendant was searching for a CD contraband that Defendant Villasenor believed Plaintiff had secreted the CD in his butt. Even if Plaintiff could state a cognizable claim, this claim is improperly joined with the claim that certain defendants read his legal mail.

**L.    Classification – Due Process**

Plaintiff claims he is being classified for housing in violation of Due Process.

The Ninth Circuit has established that pretrial detainees have "no constitutional right to a particular classification status." *Hernandez v. Johnson*, 833 F.2d 1316, 1318 (9th Cir. 1987). However, if Plaintiff can show that his housing placement has the "purpose and effect" of unconstitutional punishment, he can establish a substantive due process violation. *Mitchell*, 75 F.3d at 524. Specifically, Plaintiff must show that his housing classification (1) caused him "to suffer some harm or 'disability' "; and (2) the "purpose" of the classification was "to punish." *Demery v. Arpaio*, 378 F.3d 1020, 1030 (9th Cir. 2004) (citing Bell, 441 U.S. at 538). The harm does not have to "be independently cognizable as a separate constitutional violation." Id. However, "it must either significantly exceed, or be independent of, the inherent discomforts of confinement." *Endsley v. Luna*, 750 F. Supp. 2d 1074, 1100 (C.D. Cal. 2010) (internal quotations omitted).

A pretrial detainee may demonstrate that an action was unconstitutionally punitive by showing that the action was expressly intended to punish or that the action served an alternative, nonpunitive purpose but was " 'excessive in relation to the alternative purpose[.]' " *Demery*, 378 F.3d at 1028 (quoting Bell, 441 U.S. at 538).  Plaintiff challenges his classification to administrative segregation, but fails to allege sufficient facts to support a claim. Even if Plaintiff could state a cognizable claim, this claim is improperly joined with the claim that certain defendants read his legal mail.

**M.    Fourteenth Amendment – Due Process Hearings**

When a pretrial detainee challenges conditions of his confinement, the proper inquiry is whether the conditions amount to punishment in violation of the Due Process Clause of the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). If a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective it does not, without more, amount to "punishment." See id. at 539.

Assuming for present purposes that a pretrial detainee has the same rights as a convicted prisoner being put in administrative segregation, when jail officials initially determine whether an

inmate is to be segregated for administrative reasons, due process requires that they: hold an informal non-adversary hearing within a reasonable time after the inmate is segregated; inform the inmate of the charges against him or the reasons segregation is being considered; and allow the inmate to present his views. *See Toussaint v. McCarthy,* 801 F.2d 1080, 1091-92 (9th Cir. 1986). Periodic review of the inmate's confinement in segregated housing is required. *See Hewitt v. Helms*, 459 U.S. 460, 477 n.9 (1983). Disciplinary segregation requires more process. Disciplinary segregation as punishment for violation of jail rules and regulations cannot be imposed without complying with the procedural requirements of *Wolff v. McDonnell*, 418 U.S. 539 (1974).  "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556 (1974). With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Id. at 563-71. As long as the five minimum Wolff requirements are met, due process has been satisfied. *Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir. 1994), abrogated on other grounds by *Sandin v. Connor*, 515 U.S. 472 (1995). In addition, "some evidence" must support the decision of the hearing officer, S*uperintendent v. Hill*, 472 U.S. 445, 455 (1985), and the evidence must have some indicia of reliability, *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987). The "some evidence" standard is not particularly stringent, and the relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached...." *Hill*, 472 U.S. at 455-56.

Plaintiff states conclusory allegations of what occurred in each of the disciplinary hearings and classification determinations.  Even if Plaintiff could state a cognizable claim, this claim is improperly joined with the claim that certain defendants read his legal mail.

### N.    Fourth Amendment - Cell Searches

Generally speaking, random searches are essential to the effective security of penal institutions. *See Hudson v. Palmer*, 468 U.S. 517, 529 (1984). Consequently, a prisoner does not have a subjective expectation of privacy in his prison cell, and the Fourth Amendment proscription against unreasonable searches does not apply therein. *See Hudson,* 468 U.S. at 525-26; *Somers*, 109 F.3d at 617 (citing *Hudson*). The Fourth Amendment standard is one of "objective reasonableness." *Lolli v. County of Orange*, 351 F.3d 410, 415 (9th Cir.2003) (citing Pierce, 76 F.3d at 1043). "The question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).  Plaintiff cannot state a cognizable claim for cell searches.

## VI.    Conclusion

Based on the above, the Court finds that Plaintiff's second amended complaint states a cognizable claim for violation of First and Sixth Amendments against Defendants Stamper and Jones for reading Plaintiff's legal mail outside of Plaintiff's presence and confiscating the legal mail, but fails to state any other cognizable claims.  In addition, Plaintiff's second amended complaint alleges claims that are improperly joined.  Despite being provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the remaining deficiencies and further leave to amend is not warranted.  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

The Court HEREBY DIRECTS the Clerk of the Court to randomly assign a district judge to this action.

Furthermore, for the reasons stated above, IT IS HEREBY RECOMMENDED as follows:

1.  This action proceed on Plaintiff's second amended complaint, filed on July 20, 2020, for violation of the First and Sixth Amendments against Defendants Stamper and Jones for reading Plaintiff's legal mail outside of Plaintiff's presence and confiscating the legal mail;

2.  All other claims and defendants be dismissed from this action based on Plaintiff's failure to state claims upon which relief may be granted and be dismissed without

1        prejudice for being improperly joined in violation of Rules 18 and 20.

2   These Findings and Recommendation will be submitted to the United States District Judge

3   assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen**

4   **(14) days** after being served with these Findings and Recommendation, Plaintiff may file written

5   objections with the Court. The document should be captioned "Objections to Magistrate Judge's

6   Findings and Recommendation." Plaintiff is advised that failure to file objections within the

7   specified time may result in the waiver of the "right to challenge the magistrate's factual findings"

8   on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan,

9   923 F.2d 1391, 1394 (9th Cir. 1991)).

10

11   IT IS SO ORDERED.

12     Dated:   **July 31, 2020**              /s/ *Barbara A. McAuliffe*

13                                     UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28