# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL CAMPOSECO, | Case No. 1:19-cv-01330-AWI-BAM (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION TO DISMISS |
| v. | |
| BOUDREAUX, *et al.*, | (ECF No. 31) |
| Defendants. | **FOURTEEN (14) DAY DEADLINE** |

**I.    Introduction**

Plaintiff Samuel Camposeco ("Plaintiff") is a pretrial detainee proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on Plaintiff's complaint against Defendants Stamper and Jones for violation of the First and Sixth Amendments for reading Plaintiff's legal mail outside of Plaintiff's presence and confiscating the legal mail.

On April 27, 2021, Defendants filed a motion to dismiss on the ground that this lawsuit is barred by the Prison Litigation Reform Act ("PLRA") for Plaintiff's failure to exhaust his administrative remedies before filing suit and for failure to state a claim upon which relief can be granted. (ECF No. 31.) Plaintiff filed his opposition on June 4, 2021.[1] (ECF No. 34.)

---

[1] Plaintiff's opposition refers to Sheriff Michael Boudreaux as "defendant." Per the Court's screening order, Sheriff Michael Boudreaux has been dismissed from the case. Defendants

1

Defendants filed a reply on June 10, 2021, and Plaintiff filed a sur-reply on July 2, 2021. (ECF Nos. 36, 38.) The motion is deemed submitted. Local Rule 230(l).

## II.     Legal Standards

### A.     Motion to Dismiss Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true the allegations of the complaint in question, *Erickson v. Pardus*, 551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Meek v. Cty. of Riverside*, 183 F.3d 962, 965 (9th Cir. 1999). In ruling on the motion, the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted). The court may also consider documents incorporated by reference into the complaint. *Van Buskirk v. Cable News Network, Inc*., 284 F.3d 977, 980 (9th Cir. 2002).

In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The court has an obligation to construe such pleadings liberally. *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, a court's liberal interpretation of a pro se complaint may not supply essential elements of the claim that were not pled. *Ivey v. Bd. of Regents of Univ. of Alaska,* 673 F.2d 266, 268 (9th Cir. 1982). Also, the Court need not credit "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007).

### B.     Exhaustion of Administrative Remedies Standard

Pursuant to the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or

---

Stamper and Jones are the only remaining defendants in this case.

other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007); *McKinney v. Carey*, 311 F.3d 1198, 1199–1201 (9th Cir. 2002). "The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (alterations, footnote, and quotation marks omitted). Requiring exhaustion provides prison officials a "fair opportunity to correct their own errors" and creates an administrative record for grievances that eventually become the subject of federal court complaints. *Id.* at 94, 126; *see also Porter v. Nussle*, 534 U.S. 516, 524–25 (2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life. *Porter*, 534 U.S. at 532. Prisoners must adhere to the deadlines and other "critical procedural rules" of the prison's grievance process, *Woodford*, 548 U.S. at 90; *Jones*, 549 U.S. at 218, such that an untimely or otherwise procedurally defective grievance is insufficient. *Woodford*, 548 U.S. at 83–84.

Failure to exhaust may be excused where the administrative remedies have been rendered "unavailable," and in such a case, the plaintiff bears the burden of demonstrating that the grievance process was unavailable to him through no fault of his own. *Sapp v. Kimbrell*, 623 F.3d 813, 822–23 (9th Cir. 2010). *See also Ward v. Chavez*, 678 F.3d 1042, 1044–45 (9th Cir. 2012) (exhaustion excused where futile); *Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable"); *Brown*, 422 F.3d at 939-40 (plaintiff not required to proceed to third level where appeal granted at second level and no further relief was available). Aside from this single exception, "the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.' . . . [a]nd that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016).

///

The failure to exhaust in compliance with section 1997e(a) is an affirmative defense under which Defendants have the burden of raising and proving the absence of exhaustion. *Jones*, 549 U.S. at 216; *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). Defendants may raise exhaustion deficiencies as an affirmative defense under § 1997e(a) in either (1) a motion to dismiss pursuant to Rule 12(b)(6) or (2) a motion for summary judgment under Rule 56. *Albino v. Baca*, 747 F.3d 1162, 1168–69 (9th Cir. 2014) (en banc) ("*Albino II*"). If the Court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice of the portions of the complaint barred by § 1997e(e). *Jones*, 549 U.S. at 223–24; *Lira v. Herrera*, 427 F.3d 1164, 1175–76 (9th Cir. 2005).

## III.     Brief Overview of the Case

Briefly summarized, this action proceeds on Plaintiff's second amended complaint, filed July 20, 2020, against Defendants Stamper and Jones for violation of the First and Sixth Amendments for reading Plaintiff's legal mail outside of Plaintiff's presence and confiscating the legal mail. (ECF No. 21.)

In the second amended complaint, Plaintiff alleges that on August 19, 2019 and October 3, 2019, Defendants Stamper and Jones viewed the contents of Plaintiff 128GB flash drive that contained privileged and confidential materials, which was legal mail. Plaintiff alleges that the documents on the flash/jump drive included confidential communications from his appointed advisory counsel as well as investigations. He alleges the flash/jump drive was thoroughly read by Defendants Stamper and Jones outside of Plaintiff's presence and the flash/jump was confiscated. It contained information he had disclosed to his attorney, such as alibi witnesses, information, and work product, including interviews of alibi witnesses. Plaintiff contends that there were all kinds of confidential information on the flash drive, such as names and addresses, reports of interviews, medical information. Both Defendants Stamper and Jones viewed several folders, files, videos, and other content without Plaintiff's authorization and consent and without Plaintiff being present. They determined that the flash drive contained contraband and rejected the jump/flash drive. Plaintiff does not specifically allege that the flash/jump drive was labeled legal mail, but liberally construing the allegations, the Court found that Plaintiff alleges a

violation of his Sixth Amendment and First Amendment rights when Defendants Stamper and Jones read the entirety of flash/jump drive outside Plaintiff's presence and confiscated it.

### IV.    Defendants' Motion to Dismiss

####     A.    Defendants' Arguments

#####        1.    Defendants' Argument Regarding Failure to Exhaust

Defendants argue that Plaintiff failed to exhaust his available administrative remedies. Plaintiff did not give fair notice in the grievance of all issues in this case. Plaintiff did not allege in either the second amended complaint, or in his grievance, that defendants confiscated or read his legal mail. The "confiscation" claim should be dismissed.

Plaintiff's grievance did not alert staff that he claimed staff improperly read his legal mail. (ECF No. 31-1, p. 5.) A claim that the Defendants "viewed" the contents of the flash drive and then rejected it does not suffice to alert the jail of the new allegations in the SAC that (1) the jump drive contained confidential legal correspondence with his attorney, and that (2) Defendants specifically read such protected legal correspondence in violation of his First and Sixth Amendment rights. His grievance complained of an incident on August 19, 2019, of staff rejecting the jump drive from being dropped off by the legal runner and "intentionally deprived him" of the jump drive on August 19, 2019, provided by his counsel. Defendants assert this is untrue because the criminal court had vacated his appointment of counsel two months prior. Also, Plaintiff did not grieve any later incident on October 3, 2019.

#####        2.    Defendants' Arguments Regarding Failure to State a Claim

The jump drive is not "legal mail," because it was not from an attorney and consisted of discovery provided from a prosecutor. "Legal mail" under the First Amendment is narrowly defined. Plaintiff's jump drive was not marked as legal mail and was an isolated instance not rising to constitutional level. *Stevenson v. Koskey*, 877 F.2d 1435, 1441 (9th Cir. 1989). The Sixth Amendment protects legal mail. Plaintiff has not alleged the correspondence was properly marked as legal mail and alleges it was not so marked. Plaintiff was *pro se* at the time and did not have an attorney. Further, the jail has a substantial penological interest in scanning mail. Jail Pro-Per Policy 605 defines handling legal materials and correspondence. Materials entering or

1  leaving the jail are subject to inspection.  Only properly marked confidential correspondence
2  between a prisoner and his attorney is afforded the protections of the First and Sixth
3  Amendments.  The Defendants viewed the contents of the flash drive in the presence of Plaintiff's
4  legal runner, located contraband, and rejected the flash drive as a result.  The flash drive was
5  returned to Plaintiff's legal runner.  The conduct alleged by Plaintiff is in accord with Policy 605
6  which is reasonably related to legitimate penological interests.
7  　　　　Defendants also argue they are entitled to qualified immunity.
8  　　　　**B.　　　Plaintiff's Arguments in Opposition**
9  　　　　　　　　1.　　　Plaintiff's Argument Regarding Failure to Exhaust
10  　　　Plaintiff states that although he no longer had his appointed attorney, his former attorney,
11  Erin Brooks of the Public Defender's Office, still provided him with the legal documentation and
12  the flash drive on August 19, 2019.  As to his grievance, Plaintiff notes that the grievance was
13  submitted on 8/21/19, and says that he had not gotten a response by 9/29/19.  Plaintiff alerted
14  prison officials that he had previously filed a grievance which was never answered or returned to
15  Plaintiff.  Administrative remedies were not available to Plaintiff because he had to inquire about
16  his jump drive and had been repeatedly told that "pro per" issues were not grieveable issues.  The
17  person who reviews grievances is the person involved in the underlying wrong.  While it is
18  uncertain what Plaintiff is arguing, Plaintiff seems to take issue that his signature is not on
19  "Exhibit B" in the facility commander's step "C" response.  (ECF No. 34, p. 5.)
20  　　　　　　　　2.　　　Plaintiff's Argument Regarding Failure to State a Claim
21  　　　Plaintiff had confidential communications on the jump drive, which had been provided to
22  him by his counsel who had been representing him.  Plaintiff clarified in the second amended
23  complaint what was contained on the jump drive.  At no point did Defendants offer or discuss
24  with Plaintiff, what if any accommodations or assistance they may offer to allow Plaintiff to
25  exercise his self-representation.
26  　　　As to the Pro-Per Policy, Plaintiff was not given such a policy.  He was provided a
27  memorandum (attached as Exhibit D to the opposition).  The memorandum states that legal
28  material may be searched only in the presence of the inmate.  Attorney Erin Brooks provided the

1   jump drive to Plaintiff and labeled it "Samuel Camposeco VCF34799A."  The memorandum
2   states that Plaintiff may have a legal runner/assistant and items being brought to the jail can be
3   inspected.  Defendants had knowledge, through their own policies, of constitutional violations.
4   The jump drive was placed in a sealed manila envelope with legal mail written on the surface
5   when the defendants opened and received the envelope.  (ECF No. 34, p. 8.)
6        Plaintiff has a constitutional right to access to the courts under the First Amendment.
7   (ECF No. 34, p. 9.)  Plaintiff had a trial date in his criminal case and the rejection and deprivation
8   of the jump drive caused him to surrender his speedy trial rights.  Plaintiff has the right to self-
9   representation under the Sixth Amendment and the right to prepare a defense.  Defendants'
10  actions deprived him of documentation which he needed to build a defense.  And Defendants read
11  his legal mail.  Even a single instance is a violation of the Sixth Amendment.  *Nordstrom v. Ryan*,
12  762 F.3d 903 (9th Cir. 2014).  The Sixth Amendment gives prisoners the right to be present when
13  their legal mail is opened.  While Plaintiff agrees Defendants had the right to screen the mail, they
14  failed to give notice to Plaintiff and failed to allow him to be present while they screened the
15  jump drive.  Plaintiff argues "the legal runner followed all procedures by placing the jump drive
16  in an envelope labeled legal mail, in addition to the printed label on the jump drive itself, which
17  was specifically labelled 'SAMUAL COMPOSECO VFC 347299A'"  (ECF No. 34, p. 12.)
18  Plaintiff argues the jump drive was properly marked because it was accepted then rejected months
19  later.  Plaintiff argues that he, his advisory attorney, and investigator have a right of
20  confidentiality.
21            3.      Qualified immunity
22       Plaintiff argues that Defendant Stamper is not an "ordinary" officer.  She is the sergeant
23  assigned as the *pro per* liaison.  She is experienced in *pro per* matters.  There is a question of fact
24  whether Defendants Stamper and Jones violated Plaintiff's First and Sixth Amendment rights.  It
25  was clearly established that an inmate has the right to be present when his legal mail is screened.
26  Whether the envelope was properly labeled is a question of credibility.
27  ///
28  ///

7

**C.     Defendants' Reply Brief**

Defendants point out that Plaintiff submitted a 55-page opposition. The Court may not look beyond the allegations in the second amended complaint in ruling on a Rule 12(b)(6) motion. Any new allegations should not be considered. Plaintiff has been given several opportunities to amend his complaints and perfect his claims, and further leave to amend is not warranted.

**D.     Plaintiff's Sur-reply**

### 1.     No Right to File Sur-reply

Generally, parties do not have the right to file sur-replies, and motions are deemed submitted when the time to reply has expired. Local Rule 230(l). The Court generally views motions for leave to file sur-replies with disfavor. *Hill v. England*, No. CVF05869 REC TAG, 2005 WL 3031136, at *1 (E.D. Cal. 2005) (citing *Fedrick v. Mercedes–Benz USA, LLC*, 366 F. Supp. 2d 1190, 1197 (N.D. Ga. 2005)). However, district courts have the discretion to either permit or preclude a sur-reply. *See U.S. ex rel. Meyer v. Horizon Health Corp.,* 565 F.3d 1195, 1203 (9th Cir. 2009) (district court did not abuse discretion in refusing to permit "inequitable surreply"); *JG v. Douglas Cty. Sch. Dist.,* 552 F.3d 786, 803 n.14 (9th Cir. 2008) (district court did not abuse discretion in denying leave to file sur-reply where it did not consider new evidence in reply); *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (new evidence in reply may not be considered without giving the non-movant an opportunity to respond). In this Circuit, courts are required to afford *pro se* litigants additional leniency. *E.g.*, *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012); *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *Silva v. Di Vittorio*, 658 F.3d 1090, 1101 (9th Cir. 2011); *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

Here, Plaintiff did not seek leave of Court before filing his sur-reply. However, in light of Defendants' apparent non-opposition and Plaintiff's *pro se* status, the Court will exercise its discretion to not strike the evidence. The Court will consider proper evidence presented.

///

///

2.     Plaintiff's Sur-reply Arguments

Plaintiff argues that he is not raising new claims. He is showing the conditions the Plaintiff must live under at the detention facility. Plaintiff argues that he never signed the step C grievance form when Defendants answered the grievance, which means that they withheld his grievance. (ECF No. 38, p. 5.) He had to file a second grievance in 5 days. Plaintiff repeats that Defendants did not attempt to confer with Plaintiff to resolve the jump drive issue.

Plaintiff asks the Court to take judicial notice of his habeas corpus petition filed in February 2021, Case VHC 4049287 which is "intertwined with this instant case." (ECF No. 38, p. 7, citing to attached Exh. 1.)[2] The remainder of the sur-reply involves citations to various legal authorities pertaining to motions to dismiss.

**V.    Discussion**

**A.    Request for Judicial Notice**

Both Plaintiff and Defendants request the Court take judicial notice of various documents. Defendants ask the Court to take judicial notice of: (1) Plaintiff's Inmate Grievance form; (2) Tulare County Superior Court Case Number VCF347299 minute order of June 3, 2019 denying Plaintiff appointment of advisory counsel; and (3) Tulare County Sheriff's Pro-Per Inmate Policy 605. (ECF No. 31-2.) As mentioned above, Plaintiff seeks judicial notice of a document from Plaintiff's habeas corpus petition: Defendants' informal response to Plaintiff's petition for habeas corpus. (ECF No. 38. p. 11.)

Rule 201(d) of the Federal Rules of Evidence governs judicial notice. The content of records and reports of administrative bodies are proper subjects for judicial notice under Rule 201(d). *Interstate Natural Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953). A court may also take judicial notice of the contents of public records. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, "[c]ourts may only take judicial notice of adjudicative facts that are not subject to reasonable dispute." *United States v. Ritchie*, 342 F.3d

---

[2] The Exhibit is the County of Tulare's "Informal response" to the petition for habeas corpus, pending in the Tulare County Superior Court. As relevant to the instant case,ered that Plaintiff failed to comply with applicable habeas corpus petition requirements; and he failed to exhaust his administrative remedies.

1  903, 908–09 (9th Cir. 2003) (citing Fed. R. Evid. 201(b)).  "Facts are indisputable, and thus

2  subject to judicial notice, only if they either 'generally known' . . . or capable of accurate and

3  ready determination by resort to sources whose accuracy cannot be questioned[.]"  *Id.* at 909.

4      The Court will take judicial notice of Plaintiff's grievance because both parties have

5  submitted the same document for the Court to consider.  (*See* ECF No. 31-3 (Defendants) and

6  ECF No. 34, p. 20 (Plaintiff's Exhibit B).)[3]

7      The Court declines to take judicial notice of the Tulare County Superior Court Case

8  Number VCF347299 minute order of June 3, 2019 denying Plaintiff appointment of advisory

9  counsel.  The document has not been properly authenticated.  Fed. R. Evid. 901, 902.  The

10  document is mostly handwritten on a preprinted form, and the Court cannot discern who wrote on

11  the document.  The document is not certified as a court document.  A court may refuse to take

12  judicial notice of documents if the requesting party has failed to authenticate them.  *Madeja v.*

13  *Olympic Packers, LLC*, 310 F.3d 628, 639 (9th Cir. 2002).

14      The Court also declines to take judicial notice of Tulare County Sheriff's Pro-Per Inmate

15  Policy 605.  Judicial notice should be reserved for those matters that are virtually indisputable.

16  Plaintiff argues in his opposition that this policy is not the operable policy and attaches a different

17  memorandum which applies to pro per inmates.

18      Turning to Plaintiff's request for judicial notice, the Court declines to take judicial notice

19  of Defendants' informal response to Plaintiff's petition for habeas corpus.  The matter to be

20  judicially noticed must be relevant to the issues in the case.  Fed. R. Evid. 402.  The Court does

21  not find the document relevant to the resolution of the motion to dismiss.

22      To the extent Plaintiff's request is also for judicial notice of court orders and filings placed

23  on the court's docket in this case, it is unnecessary and shall be denied.

24  ///

25  ///

26  ///

27

28  [3] Plaintiff also submits an "Exhibit C" which is purportedly a letter Plaintiff wrote to Sheriff Boudreaux.  (ECF No. 24, p. 3, and Exhibit C.)  However, this document is illegible.

**B.     Plaintiff's Grievance and the Exhaustion Requirement**

1.      Scope of Plaintiff's Grievance

Defendants do not provide a summary of the County of Tulare's administrative procedures. However, the parties seem to be in agreement that a procedure for exhaustion exists at the jail and that Plaintiff exhausted through all levels. Indeed, Defendants do not argue that Plaintiff failed to exhaust to the highest administrative level. Rather, Defendants argue that the scope of the grievance was not sufficient to alert jail officials that Plaintiff: (1) had a "confiscation claim," (2) was challenging "reading" legal mail, or (3) was challenging any incident occurring on October 3, 2019.

a.      Confiscation claim

In rereading Plaintiff's second amended complaint, Plaintiff does not allege that the jump drive was "confiscated," or state any words to that effect. Rather, he alleges "they rejected the jump drive." (ECF No. 18, p. 5 ("they rejected the jump drive," " jump drive was not seized," the "officers deprived the plaintiff of his flash drive" "the Lexar flash drive was rejected.").) Thus, as Plaintiff is not making a claim that his property was confiscated, any such claim found by the Court to be cognizable should be dismissed.

b.      Reading Plaintiff's Legal Mail

Defendants argue that Plaintiff's grievance did not alert the jail of the claims made in his second amended complaint that Defendants read his legal mail in violation of his First and Sixth Amendment rights, because Plaintiff complained only about the authority to "view" the contents of the jump drive.

The sole grievance provided by both parties is the grievance dated 8/29/19 with the lieutenant signing off on 9/9/19. Plaintiff's grievance states:

> On 8-19-19 Sgt Stamper rejected a jump drive from being dropped off by my legal runner. I am entitled to this as a matter of law and court order. The contents were of my full discovery DA Ricky Tripp provided to my PD Erin Brooks who provided me with such. I grievanced this on 8-21-19 but have received no response. Sgt. Stamper had no authority to view the contents of the jump drive without my permission or presence. This is a single complaint regarding the rejection of the jump drive which I already grieved but got no response. Todays

11

> date is 8/29/19.  Deputy J. Yahnian was given said grievance on 8/21/19.  Signed on 8-20-19.

(*See* ECF No. 31-3, Defendants' "Exhibit Grievance" and ECF No. 35, Plaintiff's Exhibit B (unedited text).)  Again, from what the parties argue, and from what has been submitted to the Court, it appears that there is a grievance process at the jail which consists of steps A, B, and C.  Thus, the jail had a grievance process at the time of the events, and Plaintiff knew how to use the grievance process.

A prisoner's grievance must be "sufficient under the circumstances to put the prison on notice of the potential claims and to fulfill the basic purposes of the exhaustion requirement." *Irvin v. Zamora*, 161 F. Supp. 2d 1125, 1135 (S.D. Cal. 2001) . "[W]hen a prison's grievance procedures are silent or incomplete as to factual specificity, 'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'"  *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002).  This standard "advances the primary purpose of a grievance: to notify the prison of a problem." *Id.* (citing *Johnson v. Johnson,* 385 F.3d 503, 522 (5th Cir 2004).  The *Griffin* standard for exhaustion establishes a "low floor" for specificity.  *Id.*  It is enough that the inmate alerts prison officials to the specific nature of his problem and what remedy he seeks.

Plaintiff adequately put Defendants on notice of the problem for which he seeks redress.  *See Griffin*, 557 F.3d at 1120.  Broadly construed, Plaintiff's grievance concerned Sgt. Stamper's access to and "view" of the contents of the jump drive and that it was done without Plaintiff's presence or his consent.  This allegation is the sum and substance of the allegations in the second amended complaint.  While Plaintiff's grievance did not use the word "read" the contents, and instead used the word "view," this word choice does not defeat exhaustion.  The information in the grievance was sufficient to put the jail on notice of the complaint he had regarding his jump drive.  Plaintiff's grievance was sufficient under the circumstances to put the prison on notice of the potential claims and to fulfill the basic purposes of the exhaustion requirement.  As long as the basic purposes of exhaustion are fulfilled, there does not appear to be any reason to require a prisoner plaintiff to present fully developed legal and factual claims at the administrative level.

Moreover, the Ninth Circuit has under other, but somewhat analogous circumstances, required liberal construction of claims submitted by *pro se* prisoners and instructed that *pro se* prisoner plaintiffs should be given any benefit of the doubt. *See*, *e.g.*, *Klingele v. Eikenberry*, 849 F.2d 409, 413 (9th Cir. 1988).

          c. <u>Incident on October 3, 2019</u>

Plaintiff's second amended complaint alleges that Defendants deprived Plaintiff of the jump/flash drive on October 3, 2019 which contained confidential correspondence and documents between his counsel, advisory counsel and private investigators. (ECF No. 18, p. 8.) While the allegations are unclear, Plaintiff appears to be alleging a second rejection of a jump drive on October 3, 2019, separate from the rejected jump drive alleged to have occurred on August 19, 2019.

Plaintiff has not attached or argued that he submitted a grievance for any incident on October 3, 2019 involving Defendants reading a jump drive. The sole exhausted grievance is dated August 29, 2019 by Plaintiff which was exhausted through Step C.[4] (Grievance, ECF No. 31-1, p. 1; *accord* Plaintiff's Exh. B, ECF No. 34, p. 20.) The earlier submitted grievance on August 29, 2019 does not exhaust a later-occurring incident on October 3, 2019. Since Plaintiff failed to exhaust his administrative remedies through all steps for an incident on October 3, 2019, any First or Sixth Amendment claims based on events occurring on October 3, 2019 should be dismissed.

**C. Failure to State a Claim**

In screening the complaint, the Court found a cognizable claim against Defendants under the First and Sixth Amendments for reading Plaintiff's legal mail outside of Plaintiff's presence.

Prisoners have a Sixth Amendment right to confer privately with counsel and the practice of opening legal mail in the prisoner's presence is specifically designed to protect that right. *Mangiaracina v. Penzone*, 849 F.3d 1191, 1196–97 (9th Cir. 2017) (Sixth Amendment requires a

---

[4] Plaintiff refers to an earlier submitted grievance, on 8/21/19, which was not answered. For purpose of Defendants' argument, the earlier submitted grievance on 8/21/19 does not exhaust the later occurring incident on October 3, 2019.

pretrial detainee be present when legal mail related to a criminal matter is inspected; even a single incident of improper reading of a pretrial detainee's mail may give rise to a constitutional violation). Even a single instance of an employee reading a prisoner's criminal legal mail is sufficient to establish a Sixth Amendment violation. *Nordstrom v. Ryan*, 762 F.3d 903 (9th Cir. 2014) (a prison guard actually read the letter, instead of merely scanning and inspecting the letter for contraband.) Prison officials may open and inspect, but not read, a prisoner's legal mail. *Id.* at 910. In addition to prohibiting prison employees from actually reading prisoner legal mail, the Sixth Amendment gives prisoners "the right to be present when legal mail related to a criminal matter is inspected" to avoid the "chilling" of a prisoner's protected communications. *Mangiaracina v. Penzone*, 849 F.3d at 1196. To maintain a Sixth Amendment claim, a prisoner must allege that the mail was marked as "legal mail." *Id.* (the district court correctly determined that Mangiaracina failed to allege that the mail was properly marked as legal mail, so these counts were properly dismissed.) Nonetheless, correctional institutions and jails have a legitimate governmental interest in imposing certain restraints on inmate or detainee correspondence to maintain order and security. *See Procunier v. Martinez*, 416 U.S. 396, 413 (1974), overturned on other grounds by *Thornburgh v. Abbott*, 490 U.S. 401, 413–14 (1989). For example, inmates and detainees may have their mail screened to ensure that there is no contraband inside. *Mangiaracina v. Penzone*, 849 F.3d at 1195.

The Ninth Circuit "recognize[s] that prisoners have a protected First Amendment interest in having properly marked legal mail [including civil mail] opened only in their presence." *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1211 (9th Cir. 2017) (*citing Nordstrom*, 762 F.3d at 903). In *Hayes v. Idaho Correctional Center*, the Ninth Circuit held that the First Amendment protects prisoners' right to have legal mail opened in their presence. *But see Stevenson v. Koskey*, 877 F.2d 1435, 1441 (9th Cir. 1989) (an isolated instance or occasional opening of legal mail outside the inmate's presence does not rise to the level of a constitutional violation.)

"Mail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail." *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996). "All correspondence from a court to a litigant is a public document, which prison personnel could if they want inspect in the court's

14

files." *Id.* at 1094 (citing to *Martin v. Brewer*, 830 F.2d 76, 78 (7th Cir. 1987)). Mail from a "sheriff's" department which is a county agency and such mail also does not constitute legal mail. *O'Keefe v. Van Boening*, 82 F.3d 322, 326 (9th Cir. 1996) (a prison need not treat all mail sent to/from government agencies and officials as legal mail); *see also Keenan v. Hall*, 83 F.3d at 1094 (concluding that mail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail), amended on denial of rehr'g, 135 F.3d 1318 (9th Cir. 1998).

Defendants argue that the envelope was not clearly marked as legal mail and did not contain legal mail. On a motion to dismiss, the Court construes all facts in the light most favorable to the plaintiff, and construes a *pro se* complaint liberally. *Mangiaracina*, 849 F.3d at 1195. Plaintiff alleges that his former counsel, who was appointed as advisory counsel, "personally delivered this device to Plaintiff in April of 2019." (ECF No. 18, p. 5.) The Court has already liberally construed the allegations in this regard in screening the complaint.

Defendants argue that they viewed the contents of the flash drive in the presence of Plaintiff's legal runner, located contraband, and rejected the flash drive as a result. The flash drive was returned to Plaintiff's legal runner. But these facts are not alleged in the second amended complaint. The Court does not consider extraneous facts outside of the applicable amended complaint.

Here, Plaintiff alleges that "both Julie Stamper and Cory Jones viewed the contents of" the flash drive which "contained privileged and confidential materials." The documents on the flash/jump drive included confidential communications from his appointed advisory counsel as well as investigations. "Both Julie Stamper and Cory Jones viewed several folders, files, videos, and other content without my authorization, consent, and without me being present." (ECF No. 18, p. 5.) Plaintiff alleges the flash/jump drive was read by Defendants Stamper and Jones outside of Plaintiff's presence and rejected the flash/jump. Plaintiff does not specifically allege that the flash/jump drive was labeled legal mail, but liberally construing the allegations, Plaintiff alleges a violation of his Sixth Amendment and First Amendment right when Defendants Stamper and Jones read the entirety of flash/jump drive outside Plaintiff's presence.

///

The Court agrees that the defendants are permitted to scan the content as a legitimate penological purpose. *See United States v. Wilson*, 447 F.2d 1, 8 n. 4 (9th Cir. 1971) ("prison officials may examine the communications of a prisoner without infringing upon his rights"); *Smith v. Boyd*, 945 F.2d 1041, 1043 (9th Cir.1991) (upholding inspection of incoming mail). But that is not what Plaintiff alleges occurred. Plaintiff alleges Defendants read folders, files, videos and other content. The Court must construe the allegations liberally. Accordingly, the motion to dismiss for failure to state a claim should be denied.

### D. Qualified Immunity

The doctrine of qualified immunity protects government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). When considering an assertion of qualified immunity, the court makes a two-pronged inquiry: (1) whether the plaintiff has alleged the deprivation of an actual constitutional right and (2) whether such right was clearly established at the time of defendant's alleged misconduct. *See Pearson*, 555 U.S. at 232 (quoting *Saucier v. Katz*, 535 U.S. 94, 201 (2001)). A district court is "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236.

"For the second step in the qualified immunity analysis—whether the constitutional right was clearly established at the time of the conduct—the critical question is whether the contours of the right were 'sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011) (quoting *al-Kidd*, 563 U.S. at 741) (some internal marks omitted). "The plaintiff bears the burden to show that the contours of the right were clearly established." *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1109 (9th Cir. 2011). "[W]hether the law was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition." *Estate of Ford*,

301 F.3d at 1050 (citation and internal marks omitted).  In making this determination, courts consider the state of the law at the time of the alleged violation and the information possessed by the official to determine whether a reasonable official in a particular factual situation should have been on notice that his or her conduct was illegal.  *Inouye v. Kemna*, 504 F.3d 705, 712 (9th Cir. 2007); *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (the "salient question" to the qualified immunity analysis is whether the state of the law at the time gave "fair warning" to the officials that their conduct was unconstitutional).  "[W]here there is no case directly on point, 'existing precedent must have placed the statutory or constitutional question beyond debate.'"  *C.B. v. City of Sonora*, 769 F.3d 1005, 1026 (9th Cir. 2014) (citing *al-Kidd*, 563 U.S. at 740).  An official's subjective beliefs are irrelevant.  *Inouye*, 504 F.3d at 712.

Although a defendant may raise a qualified immunity defense at early stages in the proceeding, courts have recognized that the defense is generally not amenable to dismissal under Rule 12(b)(6), because facts necessary to establish this affirmative defense generally must be shown by matters outside the complaint.  *See Morley v. Walker*, 175 F.3d 756, 761 (9th Cir. 1999).  Whether Plaintiff's constitutional rights were violated in this matter, and whether a reasonable official would have known their conduct was violating a clearly established right, hinges on further factual development in this action.  *See Moss v. U.S. Secret Serv.*, 572 F.3d 962, 974–75 (9th Cir. 2009) (where extra-record evidence is proffered or required to determine the facts at hand, qualified immunity must be asserted in a summary judgment motion).  Thus, the Court cannot recommend dismissal on the basis of qualified immunity at this stage.

## VI.    Conclusion and Recommendation

Accordingly, IT IS HEREBY ORDERED that the parties' requests for Judicial Notice are GRANTED IN PART and DENIED IN PART as described, *infra*, in Section V.A.

Further, IT IS HEREBY RECOMMENDED that Defendants' Motion to Dismiss, (ECF No. 31), be GRANTED IN PART and DENIED IN PART as follows:

1. Plaintiff's claim for violation of the First and Sixth Amendments for an incident on October 3, 2019 be DISMISSED, without prejudice, on the ground that Plaintiff failed to exhaust his administrative remedies;

2. As Plaintiff is not making a claim that his jump drive was "confiscated," any such claim found by the Court to be cognizable should be DISMISSED; and

3. In all other respects, Defendants' Motion to Dismiss be DENIED.

* * *

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, under 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **October 7, 2021**         /s/ Barbara A. McAuliffe         
                                    UNITED STATES MAGISTRATE JUDGE